## LONE STAR IMMIGRATION CO. v. SCHADWINKEL. (No. 6897.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 21, 1923. Rehearing Denied March 21, 1923.)

**1. Bills and notes ⬉103(1)—Note for excess acreage not fraudulently procured.**

Where, at the time land was purchased, defendant supposed that his lots contained a certain acreage, but when settlement was made there appeared an excess to which he was not entitled, in an action on a note given for the excess the defense of fraud was unavailing.

**2. Bills and notes ⬉92(1)—Note for excess acreage held supported by consideration.**

Where, at the time lots were purchased, defendant supposed they contained a certain acreage, but when settlement was made there appeared an excess of land to which he was not entitled, a note given for the admitted excess was supported by a consideration, the note being part consideration of the deed.

Appeal from Cameron County Court; Oscar C. Dancy, Judge.

Action by the Lone Star Immigration Company against E. Schadwinkel. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

A. K. Black, of Brownsville, for appellant.
H. L. Faulk, of Brownsville, for appellee.

COBBS, J. This suit was filed by appellant to recover of appellee the sum of $500, represented by his promissory note for that amount dated January 23, 1920, payable one year after date, with 6 per cent. interest from date to maturity and 8 per cent. interest from date if not paid when due, payable semiannually with 10 per cent. attorney's fees, etc.

We make a statement of this case, as the one made is not sufficient, and in examining the statement of facts our work is embarrassed by the fact that the statement of facts have no index, and in such cases we usually require the work to be done by the clerk of this court at the expense of the appellant, whose duty it is to see that the record comes to this court properly prepared.

The defense, among other things, was that the note was obtained by fraud and was without consideration. The case was tried before the court without a jury, and judgment was rendered in favor of appellee.

On the 12th day of November, 1919, the appellant and appellee entered into a writ-ten agreement whereby in consideration of the sum of $8,900 cash, appellant was to convey to appellee certain lands located in Cameron county, Texas, described as farm blocks 11 and 12 of the El Jardin subdivision in share 27 of the Espiritu Santo grant, containing 30.49 acres more or less, under the Cameron county water improvement district No. 5. At the time of the execution of the contract for the purchase of the land, it was not known just precisely the number of acres it contained. The land was sold at the price of $300 per acre. Prior to closing the matter by deed in pursuance of the contract, it was ascertained that there was an excess of 3.43 acres in the acreage contract to be sold, stated in the contract, and appellee was called upon for an adjustment thereof at the rate of $300 per acre. At that time appellee had a claim against appellant for $320, for salary and expenses in trying to secure prospective land purchasers. On January 22, 1920, they came to an agreement to settle the matter by appellee executing and delivering the said note for $500, together with his receipt for the $320, which appellant owed him as stated and in consideration of which the deed was to be executed and delivered to him for said blocks 11 and 12 containing 33.92 acres, and which deed was delivered after the execution of said note and settlement. The deed was acknowledged the 11th day of February, 1920, and duly filed for record February 13, 1920.

Appellee himself stated he was shown the land before he purchased and testified the company—

"pointed out the boundaries of the two blocks and showed me a sales map which indicated that there were 30.49 acres in the two blocks. * * * I did not know how many acres there were in the blocks except that Mr. Fitzgerald (the agent) said there were 30.49 acres; I had been upon the land and thought I had bought what I saw.".

He further testified:

"I came back to Texas in January, 1920. The first I knew about any change in acreage was when Mr. James came to me on the red bridge crossing the resaca and said, 'Schadwinkel, your land has grown since you were here last.' And I said, 'How do you mean grown?' And he said, 'It has got three more acres more in it and you will have to pay us for this additional amount.' I replied, 'I don't want it. I got

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

more land than I want now.' I offered then, if he would give me my money back, I would return him all of block 12, but he said, 'It cannot be done.' I said, 'I haven't any money to buy any more land and I don't want any more.' We then walked up to the Community House and he said, 'We must get our matter settled.' I told him I just wanted my deed, but Mr. James would not give it to me unless I paid for the extra amount of land. He finally offered, if I would give him my note for $500 and a receipt for the $320, which was coming to me, he would then give me a deed to my land. I told him I would do it and gave him my note for $500 and my receipt for the $320, because I didn't know of any other way to get my deed. I got no other consideration for my note than the execution and delivery of my deed to me."

A number of times thereafter he admitted his obligation to pay that note and made proposition of compromise. He said further:

"Did not know I didn't have to pay the note until I consulted a lawyer about it, and he told me the note was not binding for I had got nothing for it. * * * I have never gotten anything for the note except the deed to my land. I gave my note for $500 in order to get my deed for the 33.42 acres in block 11 and 12."

[1] It is so plainly apparent that the transaction is without the first elements of fraud that we will not take up time or space in its discussion. He supposed that the lots contained only 30.49 acres when he contracted to purchase, and he knew the land was being sold at the average price of $300 per acre. When he made the settlement the matter was fairly and openly presented to him that there was an excess in the land which he was not entitled to, because he knew he had contracted for lots containing only 30.49 acres. But in order, as he says, to get his deed, not then delivered to him, he had to make the settlement and execute the note. His lawyer, who advised him, undoubtedly perceived there was no fraud, but limited his opinion to the question of failure of consideration.

[2] This note was given for part of the purchase price of the land, to pay for the admitted excess in acreage. It was a part of the consideration of the deed, and it makes no difference that it was not included in the original contract or recited in the deed. It was a part of the consideration for the land conveyed in the deed just as much as though written therein. Jessie Kleck and Bertha Kleck v. Peter Kleck (Tex. Civ. App.) 246 S. W. 720.

It will be seen from what we have said, it is our opinion that the court erred in not rendering a judgment in favor of appellant. For the reasons given, the judgment of the trial court is reversed and judgment here rendered in favor of appellant for the amount of the note sued upon, principal, interest, and attorney's fees.

Reversed and rendered.